RECEIVED
FEB - 2 2016
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JIMMIE DERAMUS d/b/a SILVER DOLLAR PAWN & JEWELRY, ET AL | CIVIL ACTION NO. 1:14-03222 |
| VERSUS | JUDGE JAMES T. TRIMBLE, JR. |
| CITY OF ALEXANDRIA, ET AL | MAG. JUDGE PEREZ-MONTES |

### MEMORANDUM RULING

Before the court is a "Motion for Summary Judgment" (R. #37) wherein defendant, Shannon Blackwood, seeks to be dismissed with prejudice from the instant lawsuit under Rule 56 of the Federal Rules of Civil Procedure.

### STATEMENT OF FACTS

Jimmie DeRamus and Peggy DeRamus, d/b/a the Silver Dollar Pawn and Jewelry ("Silver Dollar") hold the license of a pawnbroker. The pawnbroker license permits the Silver Dollar to operate as a dealer of new and secondhand property. Silver Dollar is known as Home of History Channel's *Cajun Pawn Stars*, a television program distributed worldwide. Jimmie DeRamus, Peggy DeRamus, Tammie DeRamus and Johnny DeRamus are the stars of the television program, *Cajun Pawn Stars* reality television show; they each derive income from the show.

On May 29, 2014, Kendal Bakies purchased a Rigid Power Drain Cleaner (a "sewer snake") from Home Depot.[1] In early June 2014, Bakies realized the sewer snake, along with a Stihl Weedeater, Stihl Chainsaw, Stihl Blower, Stihl Hedge Trimmer/Pole Saw/Extension Pole combo,

---

[1] Bakies paid $543.91 for the sewer snake.

1

two fishing poles and a Trolling Motor Battery had been stolen.[2] A Bill of Sale reveals that on June 12, 2014, Allison Brandon sold the sewer snake for $100.00; the June 11, 2014 Bill of Sale reveals that Brandon Allison sold the chainsaw for $30 and the pole saw with extension/hedge trimmer for $30.

After taking possession of these items, the Silver Dollar put the items in storage in a secured warehouse and reported the transactions to local enforcement agencies as required by statute.[3] Plaintiffs complain that neither the chief of police for APD nor the sheriff of Rapides has selected how transactional information is furnished under Louisiana R. S. 37:1798(A)(1). We find that this statement is irrelevant to our analysis. Plaintiffs also complain that the Chief of Police for the ADP has not appointed a designee as a person authorized by title or position to be regularly responsible for the inspection and regulation of pawnshops, or a person designated in writing to enforce provisions of Louisiana Revised Statute 37:1781 *et seq.* in accordance with Louisiana Revised Statute 1782(5)(b). We find this statement is also irrelevant to our analysis. Plaintiffs then complain that none of the officers that were involved in the investigation on June 23, 2014 and June 24, 2014 were "law enforcement officer(s)" designated by the Chief of Police of the APD in accordance with Louisiana Revised Statute 37:1782(5)(b), nor were these officers authorized under Louisiana Revised Statute 37:1797 to inspect the records maintained by the Silver Dollar with regard to the transactions with Allison in accordance with Louisiana Revised Statute 37:1796 and 1798. Again, we find this irrelevant.

---

[2] Bakies purchased the Weedeater, chainsaw and blower from Rabalais Small Engines for $274.95, $294.50 and $299.95, respectively.
[3] La. R. S. 37:1782(16), 37:1796 and 1798.

2

Bakies went to the Silver Dollar to see if the person who stole these items had sold them to the Silver Dollar. Bakies did not disclose to the Silver Dollar employees that he we searching for his stolen items; instead he inquired about purchasing a sewer snake. The employee he spoke with at the Silver Dollar informed Bakies that the Silver Dollar had a Rigid Power Drain Cleaner. After being shown the sewer snake and confirming that it was the sewer snake that had been stolen, Bakies told the Silver Dollar employee that he was looking for a larger sewer snake. Bakies did not tell the employee that the sewer snake belonged to him because he was concerned that the Silver Dollar would dispose of it.

Bakies then left the Silver Dollar, went home, called the Alexandria Police Department ("APD") and requested that they come to his home. When the APD Officer Besson arrived at his home, Bakies reported the stolen items and informed Besson that he had located the sewer snake at the Silver Dollar where it was being stored in a secured area. Bakies gave Besson his Home Depot receipt which showed the purchase of the sewer snake; Bakies also allowed Besson to take a picture of the item's box which also revealed the serial number. Bakies gave Besson a "print-out" from Rabalais Small Engines, Inc. which showed that he purchased a Stihl Weedeater, Stihl Chainsaw and Stihl Blower which also included the serial numbers of these items.[4]

Shortly thereafter, Besson went to the Silver Dollar and spoke with a Mr. Anderson who identified himself as being "in charge." Anderson agreed to show Besson the sewer snake that he had previously shown Bakies. Besson attempted to match the serial numbers on the sewer snake when he was interrupted by another Silver Dollar employee who identified himself as the

---

[4] Bakes estimates that the total value of the items was $1,800.00.

"shop manager"; the shop manager informed Besson that all he needed to know was what was on the information tag placed on the sewer snake. Meanwhile, Jimmie DeRamus appeared and yelled that detectives were the only ones that could investigate this matter.

DeRamus refused to allow Besson to further inspect the sewer snake. Defendant Blackwood informs the court that on June 12, 2014, the Silver Dollar reported the purchase of the sewer snake, but gave an inaccurate serial number; the serial number reported had four (4) inaccurate characters.

On June 24, 2014, the case reported to the APD was assigned to defendant, Detective Shannon Blackwood. Blackwood was instructed to pursue a search warrant for the stolen items.[5] A typographical error by one digit was made in identifying the serial number of the sewer snake on the search warrant.[6] After obtaining the search warrant, several APD officers arrived at the Silver Dollar to investigate the alleged theft of Bakies' property.

After Jimmie DeRamus twice refused a consensual search for the stolen items, the search warrant was executed. Even though there was a one digit typographical error as to the serial number, the APD was able to identify the sewer snake as the item on the search warrant that had been stolen from Bakies. The APD was able to locate the following items at the Silver Dollar: (1) a Rigid Power Drain Cleaner (sewer snake), (2) a Stihl Weedeater, (3) Stihl hedge trimmer/pole saw/ extension pole, and (4) documents showing that Brandon Allison sold these items to the Silver Dollar on June 11-12, 2014.

---

[5] Detective Alfred was also assigned to assist Blackwood.
[6] An extra "1" was inadvertently included in the serial number.

4

After the seizure, Blackwood took the search warrant back to the issuing Judge and was able to get the typographical error corrected.

During the chaos that took place while executing the search warrant, Blackwood forgot to give the Silver Dollar the appropriate restitution form; Blackwood returned a few days later and gave the appropriate form to the Silver Dollar dated June 24, 2014, the date of the seizure.

In late June 2014, Bakies contacted Blackwood about the return of the stolen items. Bakies informed Blackwood that he needed the stolen items returned to him because he used them in his employment, and he did not have the funds to purchase new equipment/tools. Blackwood consulted her supervisor about the return of the stolen property and was instructed to contact the District Attorney's office for a legal opinion on the matter. Blackwood complied and contacted the Assistant District Attorney and informed him as to the information she had from Bakies which indicated that he was the rightful owner. The District Attorney's office informed Blackwood that there was no problem returning the property to Bakies as long as he had provided the appropriate receipts and serial numbers. Blackwood also received a letter from the District Attorney's office advising the same.

On July 3, 2014, Blackwood obtained a recorded statement from Bakies wherein he agreed not to dispose of the items until the matter proceeded to court; it is undisputed that Bakies is the rightful owner of the stolen property listed herein-above. On September 17, 2014, Brandon Allison pled guilty to possession of stolen good in the Ninth Judicial District Court. He was *inter alia,* ordered to pay the Silver Dollar $160 in restitution.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[7] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[8] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[9] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[10] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[11] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[12] There is no genuine issue of material fact if, viewing the evidence in the light more favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[13] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.[14]

---

[7] Fed. R. Civ. P. 56(c).
[8] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
[9] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).
[10] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).
[11] Anderson, 477 U.S. at 249.
[12] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[13] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
[14] Anderson, 477 U.S. at 249-50.

**LAW AND ANALYSIS**

In her motion for summary judgment, defendant Blackwood argues that plaintiffs have no property interest in the items seized, nor do plaintiffs have an entitlement to a certain procedure. Blackwood also asserts that the search and seizure was valid. Blackwood maintains that she is entitled to qualified immunity under both state and federal law and discretionary immunity.

As noted by Blackwood, pawnshops who also operate as secondhand dealers are subject to "all other requirements of secondhand dealers set forth in R.S. 37:1861, et. seq."[15] "[L]icensing regulations for pawn shops and secondhand dealers ... are intended to prevent the trafficking of stolen goods through record-keeping and reporting requirements."[16]

A "pawn" is considered a loan,[17] whereas a purchase of property is considered a "secondhand deal." A secondhand dealer under Louisiana law includes, "Every person in this state engaged in the business of buying ... or otherwise acquiring or disposing of junk or used property...."[18] It is undisputed that the transaction on June 11, 2014 and June 12, 2014 involved the purchase of goods by the Silver Dollar from Brandon Allison. Therefore, the law with respect to a secondhand dealer is applicable.

---

[15] Louisiana Revised Statute 37:1785.
[16] Salkin, 3 Am. Law Zoning § 18:63.10 (5th ed.).
[17] La. R.S. 37:1783.
[18] La. R.S. 37:1861(A)(1).

7

Louisiana Revised Statute 37:1867 provides in part for purchases that, "[i]n all instances, a secondhand dealer shall make the item immediately available upon request by a law enforcement agency." Additionally,

> Every secondhand dealer shall obtain a statement from the seller that the junk or used or secondhand property has been paid for or is owned by the seller, and a failure of the dealer to exact a statement from the seller shall be prima facie evidence of the fraudulent intent and guilty knowledge on the part of the dealer within the meaning of this Part, sufficient to warrant a conviction.[19]

Blackwood maintains that the Silver Dollar failed to obtain a statement from Brandon Allison that he "paid for" or "owned" the property he sold to the Silver Dollar. Blackwood argues that because the Silver Dollar failed to obtain this statement from Allison, the Silver Dollar does not have a protected property interest.

On the back of each of the Bills of Sale was the following statement:

> Pledgor warrants that the thing(s) pledged are not rented, leased, or stolen, that the pledger has not received the thing(s) by fraud, that the thing(s) have no liens or encumbrances against it (them), that the Pledgor is not in voluntary or involuntary bankruptcy and is not anticipating filing a bankruptcy proceeding of any type, and that the Pledgor has the right to pawn the thing(s) pawned and is of at least 18 years of age.[20]

Plaintiffs rely on numerous civil code articles to establish their property interest in the stolen goods. Specifically, in addition to other code articles plaintiffs rely on Louisiana Civil Code article 522 which provides that a transferee of a corporeal movable in good faith and for fair

---

[19] La.R.S. 37:1864.4(A)(1).
[20] Plaintiffs' exhibit 3 and 4, R. #41-3.

8

value retains ownership of the thing even though the title of the transferor is annulled on account of a vice of consent (fraud). Good faith is defined as follows:

> An acquirer of a corporeal movable is in good faith for purposes of this Chapter unless he knows, or should have known, that the transferor was not the owner.[21]

"This article imputes knowledge if the purchaser has access to facts which would lead a prudent man to question the ownership of the vendor."[22] Blackwood asserts that the statement on the back of the Bill of Sale does not comply with the statute. In other words, it does not attest to the fact that Allison paid for or owned the stolen property. Blackwood also asserts that because Allison was willing to sell the brand new sewer snake for $100 and its value was almost $550, this should have put plaintiffs (or any reasonable person) on notice that the Allison was not the owner. Thus, Blackwood maintains that the Silver Dollar was not a good faith purchaser.

Blackwood then asserts that plaintiffs are not entitled to the procedure relied upon in Louisiana Revised Statute 37:1805 because that statute applies to pledges, not sales. Therefore, plaintiffs do not have a deprivation of due process claim. Furthermore, "an entitlement to nothing but procedure ... [is] inadequate even to support standing ... much less can it be the basis for a property interest.[23]

Next, Blackwood asserts that the search warrant was proper; it was signed by a neutral judge and based on facts. "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the

---

[21] Louisiana Civil Code article 523.
[22] Livestock Producers, Inc. v. Littleton, 748 So.2d 537, 44 (La.App. 2 Cir. 11/19/99) writ denied, 759 So.2d 762 (La. 2000).
[23] Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 764, 125 S.Ct. 2796, 2808 (2005).

clearest indication that the officers acted in an objectively reasonable manner or, as we have put it, in 'objective good faith.'" [24] "It is a sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination, and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be liable.[25]

As decided in our previous Memorandum Rulings,[26] we have already concluded and continue to find that the warrant was valid as well as the seizure of the stolen property. As noted by Blackwood, the Silver Dollar's recourse is to pursue monetary relief from Brandon Allison who was ordered to pay full restitution to the Silver Dollar.

Blackwood asserts that she relied upon the advice from the District Attorney prior to returning the stolen property to Bakies, the rightful owner. Blackwood relies on Money Market Pawn, Inc. v. Wirth,[27] wherein the court held that "[o]fficers are generally entitled to rely on a prosecutor's advice and are not required to second guess their legal judgment such that officers are entitled to qualified immunity for actions performed at the prosecutor's direction."

Qualified immunity protects government officials from civil liability when their actions could reasonably have been believed to be legal.[28] Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[29] A plaintiff seeking to overcome qualified

---

[24] Messerschmidt v. Millender, 132 S.Ct. 1235, 1245 (2012).
[25] Id. at 1245. (Citations omitted).
[26] R. #54, 56, 60 and 70.
[27] 32 F. Supp. 3d 903, 908-909 (N.D. Ill. 2014).
[28] Morgan v. Swanson, 659 F.3d 370 (5th Cir. 2011)(en banc) cert. denied, 132 U.S. 2740(2012); Whitley v. Hanna, 726 F.3d 631 (5th Cir. 2013), cert. denied, 134 S.Ct. 1935 (2014).
[29] Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

10

immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[30] When qualified immunity is invoked, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.[31]

First, there has been no violation of a statutory or constitutional right. The warrant was valid[32] and the execution of the warrant as well as the seizure of the property was valid. Furthermore, there is no due process violation; plaintiffs cannot rely on the statutory procedures in the pawnshop statutes. This transaction involved a sale which necessarily invokes the secondhand dealer statutes.

Finally, the court must decide if Blackwood's return of the property to Bakies constitutes a constitutional violation that would disqualify her from immunity. The court finds that Blackwood's reliance on the District Attorney's advice,( that as long as Bakies provided receipts and serial numbers and agreed to retain the stolen property and present it at the criminal prosecution), was proper, and there was no impropriety in returning the stolen property to its rightful owner. Significantly, this court notes that plaintiffs have not disputed that Bakies is the rightful owner. Therefore, the plaintiff's reliance on the statutes[33] for a court to determine the rightful owner is misplaced. As noted by Blackwood, there is no statute with respect to secondhand dealers with regard to an ownership dispute, but notably there is a statute that

---

[30] Ashcroft v. al-Kidd, 563 U.S. 731, 131 S. Ct. 2074, 2083 (2011).
[31] Club Retro, LLC v. Hilton, 568 F.3d 181, 194 (5th Cir. 2009); Bennett v. City of Grand Prairie, Texas, 883 F.2d 400, (5th Cir. 1989).
[32] Plaintiffs assert that Blackwood made false statements to Judge Metoyer in procuring the search warrant. Plaintiffs do not say what statements were false, and this court has reviewed the affidavit and search warrant and find that there were no false statements made as alleged by plaintiffs.
[33] La. R.S. 1805(C) and (D).

encourages the return of stolen property to the victim/rightful owner.[34] Louisiana Revised Statute 46:1844L provides as follows:

> Return of property to victim or family of victim. All judicial and law enforcement agencies shall expeditiously return any stolen or other personal property to victims or victims' families when no longer needed as evidence.

Plaintiffs' property interest, if any they have, lies with the procedure for restitution which the record clearly reveals has not been denied to plaintiffs. Blackwood provided plaintiffs with the proper restitution forms, albeit a few days late, and Brandon Allison has indeed been ordered to pay the Silver Dollar $160, the amount it paid for the stolen goods. This court finds that Blackwood is entitled to qualified immunity.

For the reasons articulated above, we further find that Blackwood is entitled to qualified immunity as to plaintiffs' state law claims[35] as well as discretionary immunity pursuant to Louisiana Revised Statute 9:2798.1 and Gregor v. Argenot Great Cent. Ins. Co.[36] It was the policy of the APD to seek legal advice from the District Attorney's office which is what Blackwood did after seeking instruction from her supervisor. Blackwood followed that advice in returning the property to Bakies. We find that Blackwood's reliance on the legal advice from the District Attorney's office was entirely reasonable. Accordingly, the court finds that Blackwood is also entitled to discretionary immunity.

---

[34] La. R. S. 37:1844(L).
[35] Burge v. Parish of St. Tammany, 187 F.3d 452 (5th Cir. 1999); Jackson v. State, through the Dept. of Corrections, 785 So.2d 803 (La. 5/15/01); Moresi v. State, through the Dept. of Wildlife and Fisheries, 567 So.2d 1081 (La. 9/6/90).
[36] 851 So.2d 959, 967 (La. 5/20/03).

In the Memorandum Ruling addressing the motion for summary judgment filed by the various defendants which included the City of Alexandria,[37] the court declined to dismiss the City because not all of the individual officers' motions had been decided. In their motion, the City asked to be dismissed because no one for whom the City was legally responsible is at fault and/or negligent. We expressly postponed our decision to dismiss the City until we decided the motions to dismiss each individual officer. The instant ruling dismisses with prejudice the last officer in this lawsuit, and the court has now dismissed with prejudice each of the officers named in this lawsuit. Accordingly, the court will also dismiss the City of Alexandria as there can be no vicarious liability.

## CONCLUSION

For the reasons stated herein-above, the motion for summary judgment filed by Shannon Blackwood will be granted dismissing this defendant with prejudice. The court will further dismiss with prejudice the City of Alexandria.

**THUS DONE AND SIGNED** on this 2nd day of February, 2016.

JUDGE JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[37] R. #54.